UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| *Plaintiff,* | § § | |
| v. | § | EP-20-CR-00226-DCG |
| CARL MONROE GORDON, | § § § | |
| *Defendant.* | § § | |

## ORDER

On May 3, 2021, the Court began conducting the ongoing jury trial in the above-captioned cause after implementing a series of safety protocols to safeguard the health and safety of Court personnel, litigants, counsel, law enforcement, witnesses, and jurors. In anticipation of the trial testimony of his rebuttal expert witness, Defendant Carl Monroe Gordon asks the Court to allow his expert witness, Dr. Elliot L. Atkins, to watch the trial testimony of the Government's expert, Dr. Veronique Valliere, via Zoom video conference and to allow Dr. Atkins to testify in the same manner. While it does not object to Defendant's request, the Government expressed its concern that such "broadcast" of a trial proceeding may be prohibited by the Federal Rules of Criminal Procedure.

The Sixth Amendment mandates, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and *public trial* . . . ." *Presley v. Georgia*, 558 U.S. 209, 212 (2010) (emphasis added). The Supreme Court has also interpreted the First Amendment to guarantee the press and public a right of access to criminal trials. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). To date, however, no case, statute, or rule suggests that this right of public access

includes a right to televise, record, or otherwise broadcast trials. *See United States v. Edwards*, 785 F.2d 1293, 1295 (5th Cir. 1986). In fact, the opposite is true.

As the Government correctly notes, Federal Rule of Criminal Procedure 53 expressly prohibits "the broadcasting of judicial proceedings from the courtroom." Fed. R. Crim. P. 53. Further, the Judicial Conference of the United States has consistently reaffirmed throughout the years its opposition to permit criminal courtroom proceedings in district court to be broadcasted, televised, recorded, or photographed for the purpose of public dissemination. *See, e.g.*, Annual Report of the Proceedings of the Judicial Conference of the United States, March 8-9, 1962, p. 10; Chief Justice William H. Rehnquist, Judicial Conference of the United States, Report of the Proceedings of the Judicial Conference of the United States, Washington, DC, September 20, 1994, p. 45, at http://www.uscourts.gov/file/2120/download; Chief Justice William H. Rehnquist, Judicial Conference of the United States, Report of the Proceedings of the Judicial Conference of the United States, Washington, DC, March 12, 1996, p. 17, at http://www.uscourts.gov/file/2119/download.

Moreover, while § 15002(b) of the "Coronavirus Aid, Relief, and Economic Security Act" ("CARES Act"), enacted on March 27, 2020, authorizes the broadcasting of certain criminal proceedings virtually (including, detention hearings, initial appearances, preliminary hearings, waivers of indictment, arraignments, probation and supervised release revocation proceedings, pretrial release revocation proceedings, and felony pleas and sentencings, among others), it does not expressly authorize courts to broadcast jury trial proceedings. *See* CARES Act, Pub. L. No. 116-136, § 15002(b).[1]

---

[1] But notably, the broadcasting authorization in the CARES Act appears more relevant to the requirement in Federal Rule of Criminal Procedure 43, providing that a criminal defendant's presence is required at the majority of criminal proceedings, and not to the prohibition in Rule 53. *See* Fed. R. Crim. P. 43(a) (Defendant's Presence—When Required).

However, all of these authorities appear to prohibit the broadcasting[2] of criminal proceedings to the general public outside the courtroom, but not under all circumstances. Indeed, the Judicial Conference's current policy for cameras in trial courts provides the following:

> A judge may authorize broadcasting, televising, recording, or taking photographs in the courtroom and in adjacent areas during investitive, naturalization, or other ceremonial proceedings. A judge may authorize such activities in the courtroom or adjacent areas during other proceedings, or recesses between such other proceedings, only:
>
> 1) for the presentation of evidence;
> 2) for the perpetuation of the record of the proceedings;
> 3) for security purposes;
> 4) for other purposes of judicial administration;
> 5) for the photographing, recording, or broadcasting of appellate arguments; or
> 6) in accordance with pilot programs approved by the Judicial Conference.

United States Courts, *About Federal Courts: History of Cameras in Courts* (last visited May 5, 2021), available at https://www.uscourts.gov/about-federal-courts/judicial-administration/cameras-courts/history-cameras-courts; *see also* Chief Justice William H. Rehnquist, Judicial Conference of the United States, Report of the Proceedings of the Judicial Conference of the United States, Washington, DC, September 12, 1990, p. 104, at https://www.uscourts.gov/sites/default/files/reports_of_the_proceedings_1990-09_0.pdf.

Due to the exigent circumstances presented by the COVID-19 pandemic and the need for judicial efficiency to safeguard the health and safety of all those involved in the ongoing criminal jury trial, the Court will authorize Dr. Atkins to watch Dr. Valliere's trial testimony and to subsequently testify via Zoom video conference. This limited broadcast of Defendant's jury trial

---

[2] According to Black's Law Dictionary, "broadcasting" is defined as "[t]he distribution of audio and video content to a dispersed audience via broadcast radio, broadcast television, or other technologies. ... Receiving parties may include the general public or a relatively large subset of thereof." *Black's Law Dictionary Online*, https://thelawdictionary.org/ (last visited May 5, 2021) (defining "broadcasting").

proceedings is solely intended for the purposes of (1) the presentation of evidence; and (2) for other purposes of judicial administration. It is not intended to authorize the broadcast Defendant's jury trial proceedings to the general public outside of the courtroom, with the exception of the live video and audio feed that is streamed into an overflow room.[3] None of these purposes run afoul of the prohibition Federal Rule of Criminal Procedure 53, the Judicial Conference's policies, or of any other relevant authority.

Neither does the Court's authorization violate any of Defendant's constitutional right to a fair trial. Instead, it serves to protect it. To begin, it is Defendant himself who seeks leave to have his expert witness to testify remotely so that his expert can fully review Dr. Valliere's testimony and have a fair opportunity for cross-examination and rebuttal. What is more, as it is Defendant and not the Government who requests such leave, there would be no violation of the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 51 (2004) (noting that the Confrontation Clause "applies to 'witnesses' against the accused").

Moreover, under the current circumstances, judicial efficiency and the interests of justice are better served by the Court authorizing Dr. Atkins to attend the jury trial remotely. First, as Dr. Atkins is located in New Jersey, he would still have to fly to El Paso. Not only would this course of action demand more expenditure of everyone's time and resources than its alternative, but it would also increase the risk of spreading COVID-19 among those involved in the jury trial.

And second, there is little to no benefit from Dr. Atkins attending the jury trial in person. To date, the courtroom lacks any available space for Dr. Atkins, or anyone for that matter, to attend and watch Defendant's jury trial proceedings because court staff, litigants, and jurors are

---

[3] To maintain the appropriate social distance recommended by the Centers of Disease Control ("CDC") between court staff, litigants, and jurors inside the courtroom, the general public and the media are only able to attend the jury trial proceedings from the overflow room.

already spread all across the courtroom to maintain a safe distance from each other. As such, Dr. Atkins would be required to watch Dr. Valliere's testimony via Zoom in the overflow room; that is, he would still be attending the hearing in the exact same manner, and with substantially similar limitations, as he would otherwise.

Accordingly, the Court **GRANTS** Defendant Carl Monroe Gordon **LEAVE** to have his expert witness, Dr. Elliot L. Atkins, watch Dr. Veronique Valliere's trial testimony and subsequently testify via Zoom video conference.

**So ORDERED and SIGNED this 6th day of May 2021.**

_____
**DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE**